O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PHYLLIS GARCIA, | ) | Case No. CV 08-4840-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Phyllis Garcia seeks judicial review of the Commissioner's denial of her application for Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI") under the Social Security Act. For the reasons stated below, the action is remanded for further proceedings consistent with this opinion.

**I. Facts and Procedural History**

Plaintiff was born on September 30, 1950, and she has an eleventh grade education. (Joint Stip. 2.) Plaintiff's work history includes positions as a packing supervisor and quality control inspector.

(Administrative Record ("AR") 419-20.) Plaintiff has not been gainfully employed since June 12, 2001, when she fell in a supermarket and injured her back. Plaintiff's date last insured is December 31, 2006.

Plaintiff filed applications for SSDI and SSI on May 2, 2005, and May 26, 2005, respectively, alleging a disability onset date of June 12, 2001, due to a number of physical and mental impairments. (AR 80, 133.) The Commissioner denied Plaintiff's claim on February 16, 2006, and again on January 26, 2007, upon reconsideration. (AR 47-57.) After Plaintiff's timely request, Administrative Law Judge ("ALJ") Richard A. Urbin held a hearing on February 5, 2008, at which Plaintiff testified and was represented by counsel. (Joint Stip. 2.) A vocational expert also testified at the hearing.

Applying the analysis mandated by the Social Security Regulations,[1] the ALJ concluded that Plaintiff was not disabled and denied her claim for benefits on February 29, 2008. (AR 17-29.) The ALJ found that Plaintiff had the following medically determinable impairments[2]:

---

[1] When determining whether a claimant's impairments and limitations falls within the meaning of "disability," the ALJ must consider the following questions: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's medically determinable impairment is "severe" and meets the durational requirement; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

[2] To obtain disability benefits under the Social Security Act, a claimant must establish "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and

hypertension, anterolisthesis, spondylosis, degenerative disc disease and facet joint arthritis of the lumbosacral spine, chronic nicotine abuse, an adjustment disorder with depression, and anxiety. (AR 20.) The ALJ determined that Plaintiff also had a number of conditions that were not medically determinable impairments, including: sinusitis, cardiac impairment other than hypertension, shingles, anemia, decreased visual acuity, obesity, dental abscess, torn posterior horn of the medial meniscus and possible radial tear and extrusion of the medial meniscus body, left shoulder cyst, bulge in the right triceps, right hand tremor, hypothyroidism, dizziness, and right shoulder osteoarthritis of the acromioclavicular joint.[3] (AR 20-22.)

The ALJ then concluded that Plaintiff's medically determinable physical impairments, in combination, were severe under the regulations, but that Plaintiff's mental impairments were not severe. (AR 23.) The ALJ determined that Plaintiff's physical or mental impairments did not meet or equal any listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. (AR 23.)

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and 10 pounds frequently, stand, walk, or sit for six hours out of an eight-hour

---

laboratory diagnostic techniques." *Id.* § 404.1508. If a claimant does not have a medically determinable impairment, the claimant is not disabled.

[3] For many of these conditions, the ALJ concluded that they were not medically determinable impairments because they could not be expected to last for twelve continuous months. The Court notes that the durational requirement is a separate inquiry from determining whether the claimant has a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 404.1509. This is a minor semantic error, however, having no impact on either the ALJ's decision or the Court's analysis, so the Court need not address it further.

workday, and perform simple and complex work. (AR 23.) In reaching the RFC determination, the ALJ gave no weight to a treating nurse practitioner's opinion and found that Plaintiff was not credible as to her subjective symptoms and limitations. (AR 24-27.) The ALJ concluded that Plaintiff was capable of performing past relevant work and was not disabled under the Social Security Act. (AR 28.)

Plaintiff appealed the ALJ's decision to the Social Security Administration Appeals Council, providing more recent medical records that the Appeals Council made part of the record. (AR 7.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 30, 2008. (AR 3.) Plaintiff then filed the instant action on August 1, 2008, alleging that the ALJ erred by failing to fully develop the record and by improperly evaluating Plaintiff's symptoms and credibility. (Joint Stip. 3.)

**II.  Standard of Review**

The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts

from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion**

Plaintiff argues that the ALJ failed to fully develop the record by relying on the consulting and state agency physicians' opinions that were rendered before Plaintiff's condition allegedly worsened. (Joint Stip. 4.) Plaintiff also contends that the ALJ improperly rejected the treating nurse practitioner's opinion.

Plaintiff appeared for a consultative examination with consulting physician Rocely Ella-Tamayo, M.D., on January 4, 2007. (AR 299-304.) Dr. Ella-Tamayo diagnosed Plaintiff with untreated hypertension, back pain, and chronic nicotine abuse, finding that Plaintiff could push, pull, lift and carry twenty pounds occasionally and ten pounds frequently, with no postural limitations, restrictions on sitting, or functional impairment in either hand. (AR 303.) Dr. Ella-Tamayo further opined that Plaintiff could stand and walk for six hours out of an eight-hour day. (*Id.*) On January 25, 2007, a non-examining state agency physician reached a similar conclusion upon reviewing Plaintiff's medical records. (AR 276-83.) The ALJ relied on these opinions in reaching the RFC determination. (AR 27-28.)

Plaintiff alleges that her shoulder and knee condition deteriorated in August 2007. (Joint Stip. 7.) On October 16, 2007, Plaintiff's doctor gave her a knee immobilizer, then an elastic knee brace on November 1, 2007. (AR 246-47.) On November 8, 2007, Plaintiff received a base quad cane. (AR 245.) On January 15, 2008, Plaintiff's doctor issued a lumbar

support brace. (AR 244.)

A January 22, 2008, MRI of Plaintiff's left knee revealed a longitudinal horizontal tear of the posterior horn and body of the medial meniscus with a possible complicating radial tear at the posterior horn with extrusion of the medial meniscal body causing moderate bowing of the MCL; near full-thickness chondral thinning at the medial aspect of the medial femorotibial compartment in the region of the extruded medial meniscus with mild reactive marrow edema in the medial tibial plateau; mild chondral thinning at the patellofemoral compartment involving the superior portion of the patellar apex and medial facet with no full thickness chondral defect; mild joint effusion; moderate popliteal cyst that appeared to be leaking; and mild nonspecific edema in the prepatellar subcutaneous soft tissues. (AR 258, 261.)

An MRI of Plaintiff's right shoulder on the same date showed moderate tendinosis of the supraspinatus tendon with fluid signal through the anterior fibers of the supraspinatus tendon, possibly indicating a small focal full-thickness perforation; mild subscepularis tendinosis with no focal tear; thickening and irregularity of the long head of the biceps tendon within the bicipital groove suggesting tendinosis with nonvisualization of the long head of the biceps tendon at the intracapsular portion indicating possible full-thickness tear; large joint effusion; moderate fluid collection in the subacromial subdeltoid bursa; mild glenohumeral osteoarthrosis with small marginal osteophyte formation; acromioclavicular osteoarthrosis with inferiorly projecting osteophyte formation and minimal impression on the supraspinatus myotendinous junction; mild heterogeeous signal in the superior glenoid labrum, possibly indicating degenerative changes in the

labrum. (AR 260, 259.)

A February 13, 2008, MRI of Plaintiff's lumbar spine showed small disc bulges not resulting in significant spinal stenosis at L2-3, L4-5, and L5-S1; grade 1 anterolisthesis L4 on L5 and L5 on S1; degenerative changes including mild bulging of uncovered disc mildly narrowing the spinal canal, though not resulting in significant central canal stenosis; facet hypertrophy mildly encroaching upon the lateral recess, right greater than left; mild to moderate right and mild left foraminal narrowing; and significant changes in disc space suggesting degenerative gas formation. (AR 408-09.) On February 26, 2008, Plaintiff's doctor prescribed a walker with a seat. (AR 413-14.)

On January 31, 2008, Plaintiff's treating nurse practitioner, Juanita Harper, completed a medical assessment, noting that Plaintiff suffered from several conditions including a possible torn medial meniscus in her left knee, and opined that Plaintiff had "poor prognosis for re-entering the workforce." (AR 254-57.) Plaintiff was referred for surgery for her left knee and left shoulder. Plaintiff had a cyst in her shoulder removed on March 18, 2008, though she still reported significant shoulder pain on April 9, 2008. (AR 382-83, 387.) Plaintiff was approved for knee surgery on April 16, 2008, which is where the medical records end. (Joint Stip. 7.)

With no discussion whatsoever, the ALJ concluded that Plaintiff's left knee impairment, left shoulder cyst, and right shoulder impairment would not persist for twelve consecutive months (AR 22), as necessary for a finding of disability. 42 U.S.C. § 1382c(a)(3)(A). The Social Security Regulations require the ALJ to provide a more detailed analysis, however:

//

>All cases denied on the basis of insufficient duration must state clearly in the denial rationale that either:
>>Within 12 months of onset, there was or is expected to be sufficient restoration of function so that there is or will be no significant limitation of the ability to perform basic work-related functions....; or
>>Within 12 months of onset, there was or is expected to be sufficient restoration of function so that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in [substantial gainful activities], considering pertinent vocational factors.
>
>In the latter case, a thorough documentation, evaluation, and rationalization of the claimant's RFC, work history, and vocational potential will be necessary.

SSR 82-52, 1982 WL 31376 (S.S.A. 1982). The ALJ's conclusory statements that Plaintiff's knee and shoulder impairments did not meet the durational requirement are insufficient.

Moreover, the medical records provide no support for the ALJ's conclusion. The only notation in the record even indirectly addressing the expected duration of Plaintiff's impairments is the nurse practitioner's assessment that Plaintiff had a "poor prognosis for returning to the workforce." (AR 254.) The ALJ rejected Harper's opinion because she is not a physician, no evidence shows a physician approved her opinion, and "her opinion relies in part on impairment of the left knee and right shoulder ... that I anticipate will not persist for 12

consecutive months. (AR 27.) In other words, the ALJ rejected what appears to be the only opinion in the record touching on the durational aspect of Plaintiff's impairments, because he had already determined that those impairments did not meet the durational requirement. Aside from the fact that the ALJ cannot summarily reject a treating nurse's opinion simply because she is not a physician, 20 C.F.R. § 404.1513(d)(1); SSR 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006), the ALJ failed to provide sufficient explanation for his belief that Plaintiff's shoulder and knee impairments would resolve within twelve months.

The existence of ambiguous evidence, or inconclusive or otherwise inadequate medical records triggers an ALJ's duty to seek clarification or additional evidence from medical sources. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ must "investigate the facts and develop the arguments both for and against granting benefits...." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (*cited by Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2000). The ALJ's duty to fully and fairly develop the record exists even when the claimant is represented by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

Here, the ALJ concluded without discussion that several of Plaintiff's impairments did not meet the durational requirement, then summarily rejected the only evidence that might have shed light on the extent of Plaintiff's limitations. The ALJ erred. Remand is appropriate to ascertain the expected duration of Plaintiff's knee and shoulder impairments, and to consider whether those impairments have an impact on
//
//

the RFC determination.[4] The Court need not address Plaintiff's other assignments of error.

**V.  Conclusion**

For the reasons stated above, it is **ORDERED** that the case be remanded to the ALJ for proceedings consistent with this opinion. The Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is **DENIED**.

DATED: May 15, 2009

_____
MARC L. GOLDMAN
United States Magistrate Judge

---

[4] Defendant also argues that Plaintiff should have filed a new application when her condition worsened, citing *Sanchez v. Sec'y of Health & Human Serv.*, 812 F2d 509, 512 (9th Cir. 1987). (Joint stip. 17.) *Sanchez* provides a framework for determining whether medical evidence submitted after the Commissioner's final decision should reopen the case. Plaintiff raised her worsened condition even before the hearing, and well before the Commissioner submitted a final decision on Plaintiff's claim. *Sanchez* is inapposite and Defendant's argument is without merit.